**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     No. CR 15-1891 JB

EDGAR RODRIGUEZ,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Appeal of Detention Order on Behalf of Edgar Rodriguez, filed December 18, 2015 (Doc. 37)("Appeal").  The Court held a hearing on January 7, 2015.  The primary issue is whether the Court should change Defendant Edgar Rodriguez' conditions of release pending trial to allow him to return home to San Diego, California, when his father lives across the border in Tijuana, Mexico.  Because the United States shows by a preponderance of the evidence that Rodriguez constitutes a flight risk, the Court declines to change his conditions of release and denies the Appeal.

**FACTUAL BACKGROUND**

The Court sets forth the facts as Plaintiff United States of America alleges them in its Criminal Complaint, filed May 18, 2015 (Doc. 1), and as the United States Probation Office describes them in the Bail Report (disclosed May 18, 2015)("Bail Report"), bearing in mind that Rodriguez is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976) ("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.")(citing Coffin v. United States,

156 U.S. 432, 453 (1895)).  The Court recites the United States' version of the facts, because the high burden of proof placed on it necessitates that it have a cogent, internally consistent version of events,[1] and not out of any predisposition to believe the United States' side of the story.  See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The Bail Report indicates that Rodriguez was born in San Diego, California, where his mother currently resides and works as a caretaker.  See Bail Report at 1.  Rodriguez has eight siblings, with whom he maintains regular contact.  See Bail Report at 1.  His father lives in Tijuana, Mexico.  See Bail Report at 1.  Rodriguez has lived with his mother and brother, Carlos Rodriguez, since approximately 2006.  See Bail Report at 2.  Rodriguez reported that, before he was arrested, "he travel[ed] to Tijuana, Mexico every weekend to stay with his father."  Bail Report at 2.

Since 2013, Rodriguez has been unemployed.  See Bail Report at 2.  He relies upon his mother and girlfriend for support.  See Bail Report at 2.  He has no assets or liabilities.  See Bail Report at 2.  Rodriguez obtained his high school diploma and has an Associate's Degree in graphic design from Platt's College in San Diego, California.  See Bail Report at 2.  Although he has been arrested for possession of a narcotic or controlled substance in San Diego, California,

---

[1]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story.  He or she may sit back and attempt to poke holes in the United States' theory of the case, and need not put on any case at all.  See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. April 4, 2005) (Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case."  (footnote omitted)).

he has not been convicted.  See Bail Report at 4 (stating that there has been "No Disposition" regarding the narcotics-related charge).

## **PROCEDURAL BACKGROUND**

The United States has charged Rodriguez with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) by possessing with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.  See Criminal Complaint at 1; Bail Report at 1.  Rodriguez was indicted on May, 28, 2015.  See Indictment, filed May 28, 2015 (Doc. 10).  The USPO concluded that the following conditions made Rodriguez a flight risk: (i) his lack of employment; (ii) his prior failure to appear for court; and (iii) his extensive ties and weekly travel to Mexico.  See Bail Report at 1.

The original Bail Report recommended that "conditions are available, and may be fashioned to adequately manage the risk of non-appearance and danger to the community."  Bail Report at 3.  United States Probation Officer Annie Candelaria advised that Rodriguez be released to the third party custody of La Pasada Halfway House in Albuquerque, New Mexico, and subject to various conditions.  See Bail Report at 3.  These conditions include: (i) reporting regularly to probation; (ii) refraining from possessing a firearm or other dangerous weapons; (iii) refraining from drinking alcohol and submitting to random alcohol screening; (iv) refraining from using or possessing illegal narcotics; (v) complying with random drug screening; and (vi) restricting travel to Bernalillo County.  See Bail Report at 3.

On May 18, 2015, the Honorable Karen Molzen, Chief United States Magistrate Judge for the District of New Mexico, entered an order releasing Rodriguez to the third-party custody of the La Pasada Halfway House.  See Order Setting Conditions of Release at 2, filed May 19, 2015 (Doc. 8).  On September 10, 2015, Rodriguez moved to modify the conditions of his

release to allow him to return to San Diego.  See Motion to Modify Conditions of Release, filed September 10, 2015 (Doc. 26).  On September 15, 2015, Judge Molzen orally denied Rodriguez' Motion to Modify Conditions of Release and ordered Rodriguez to remain on his current conditions of release.  See Clerk's Minutes for Proceedings Before Magistrate Judge Karen B. Molzen, filed September 15, 2015 (Doc. 28).

Rodriguez filed an unopposed motion to continue the trial on August 31, 2015.  See Unopposed Motion to Continue Trial Set for September 4, 2015 and Request for Motion Deadline (Doc. 24)("Motion to Continue").  The Court granted the Motion to Continue on September 1, 2015.  See Order Continuing Trial and Extending Motion Deadlines, filed September 1, 2015 (Doc. 25).  The Court subsequently granted Rodriguez' four additional motions to continue the trial.  See Stipulated Motion to Continue Trial Set for October 5, 2015, and Extension of Motion Deadline, filed September 22, 2015 (Doc. 29); Order to Continue Trial and Extending Motion Deadlines, filed September 23, 2015 (Doc. 30); Stipulated Motion to Continue Trial Set for November 5, 2015, and Extension of Motion Deadline, filed November 2, 2015 (Doc. 31); Order Continuing Trial and Extending Motion Deadlines, filed November 5, 2015 (Doc. 33); Stipulated Motion to Continue Trial Set for December 4, 2015, and Extension of Motion Deadline, filed December 2, 2015 (Doc. 34); Order Continuing Trial and Extending Motion Deadlines, filed December 3, 2015 (Doc. 35); Stipulated Motion to Continue Trial Set for January 4, 2016, filed December 18, 2015 (Doc. 36); Order Continuing Trial and Extending Motion Deadlines, filed December 28, 2015 (Doc. 39).

Rodriguez appealed Judge Molzen's order on December 18, 2015.  See Appeal at 1.  He "asks that the Court enter a new order setting conditions of release" for three main reasons. Appeal at 1.  First, he states that the USPO has revised its recommendation for what conditions

are necessary to mitigate his risk of flight.  <u>See</u> Appeal at 2-3.  As of January 6, 2016, the USPO "recommends the Court amend conditions of release to allow the defendant to live in San Diego, California, with his mother and brother while he awaits future Court proceedings under supervision of the pretrial office in the Southern District of California."  Second Addendum to Bail Report (disclosed January 6, 2016).

Second, Rodriguez states that his personal characteristics demonstrate that he will perform well on pretrial supervision and need not remain at the La Pasada Halfway House.  <u>See</u> Appeal at 2.  He states that he obtained an education, completing his Associate's Degree at Platt College in San Diego with a focus on web and graphic design.  <u>See</u> Appeal at 2.  He asserts that he continued his studies at Devry University, furthering his knowledge in the same fields.  <u>See</u> Appeal at 2.  He states that, while he was in San Diego, he "worked in retail at Macy's and then Home Depot before getting into the food industry, where he worked at Wings and Things." Appeal at 2. He argues that, since his arrest, he has worked two jobs in Albuquerque: at Wendy's and at Buffalo Wild Wings.  <u>See</u> Appeal at 2.  He contends that his work ethic and ability to maintain two jobs demonstrates that he will perform well on pretrial supervision outside of the halfway house.

Third, Rodriguez points to his lack of criminal history or other dangerous behavior.  <u>See</u> Appeal at 2.  He states that he did not possess firearms at the time of his arrest and that "his charges are entirely non-violent."  Appeal at 2.  Furthermore, he states that he has no prior convictions.  <u>See</u> Appeal at 2.  He asks that he be allowed to submit to pretrial supervision in the Southern District of California, his hometown.  <u>See</u> Appeal at 1.  He contends that "Pretrial Services Officer John Lovato recommended, at the last hearing that, Mr. Rodriguez be allowed to return to San Diego conditioned upon his supervision by the Southern District of California."

- 5 -

Appeal at 4.  Rodriguez contends that he is not a flight risk because "conditions can be fashioned to ensure his compliance."  Appeal at 4.  He argues that his current compliance with all conditions of release demonstrates that he will comply with any future conditions.  See Appeal at 4.

The United States responded on December 21, 2015.  See United States' Response to Appeal of Detention Order (Doc. 38)("Response").  In its two-page Response, the United States asserts that Rodriguez "represents a danger to the community and a flight risk, and that no combination of conditions [] would ensure Defendant's appearance and the safety of the community should Defendant be allowed to travel to California."  Response at 1.  It states that there is "overwhelming evidence" against Rodriguez.  Response at 1.  Moreover, it contends that Rodriguez constitutes a flight risk, because he would likely travel to the border of California and Mexico while he is pending prosecution.  See Response at 1.

The Court held a hearing on January 7, 2011.  See Transcript of Hearing (taken January 7, 2016)("Tr.").[2]  Rodriguez argued that he did not believe the United States considered him a danger to the community.  See Tr. at 4:13-16 (Lucero).  Moreover, he contended that the United States could not meet its "high burden" to show by clear-and-convincing evidence that he is a danger to the community.  Tr. at 4:15-19 (Lucero).  Accordingly, he asserted, "this case comes down to a flight risk analysis."  Tr. at 4:3-5 (Lucero).  Rodriguez stated that he does not constitute a flight risk, because he has returned to the halfway house every night for the past seven months.  See Tr. at 5:19-22 (Lucero).

The United States responded that Rodriguez had done "a terrific job on pretrial release so far."  Tr. at 7:1-2 (Mysliwiec).  With respect to the potential danger Rodriguez might pose, the

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

United States contended that "there is little chance that this defendant would be dealing drugs or anything like that, were you to approve this motion."  Tr. at 7:4-9 (Mysliwiec).  Consequently, it conceded that "this is essentially a question of whether Defendant's proximity to the border in [Tijuana] is going to lead him into temptation to try to flee this prosecution."  Tr. at 7:9-15 (Mysliwiec).  Nevertheless, the United States "oppose[d] the motion based on the concern that it would be . . . unwise to take someone facing real federal prison time and place them so close to the border of Tijuana."  Tr. at 8:1-6 (Mysliwiec).

The Court acknowledged that Rodriguez had done well on pretrial supervision, but worried that he might not do as well if he goes to California, where he will no longer be working two jobs like he does in Albuquerque presently.  See Tr. at 8:15-22 (Court).[3]  Rodriguez stated that his supervisors at Wendy's and Buffalo Wild Wings would potentially be able to transfer him to their San Diego locations temporarily.  See Tr. at 9:9-14 (Rodriguez).  The Court stated that it would be more likely to grant Rodriguez' Appeal if he sent the Court a letter from his employers affirming that they would allow him to work at their San Diego locations.  See Tr. at 9:16-21 (Court).  It directed Rodriguez to send the Court such a letter, confirming his employment in San Diego and containing the number of hours he would work.  See Tr. at 9:19-25 (Court).  The Court therefore denied the Appeal without prejudice to allow Rodriguez to renew it once he obtained letters from his employers.  See Tr. at 10:20-25 (Court).

Rodriguez also notified the Court that he would likely plead guilty in the next week or two.  See Tr. at 3:20-22 (Lucero).  Consequently, he admitted that his presumption of innocence status would not "stay the same much longer."  Tr. at 4:2-4 (Lucero).  USPO Paul Valdez asserted that his recommendation to allow Rodriguez to return to California was premised on the

---

[3]The Court was also concerned that Rodriguez' trial date is February 3, 2016.  It does not make sense to change his conditions of release so close to trial.

notion that Rodriguez was not pleading guilty. See Tr. at 13:9-15 (Valdez)("[T]his recommendation at this point is not with the mindset that he's entering a plea in a few short weeks."). The United States, Rodriguez, and the USPO confirmed that, once Rodriguez pled, he had to be detained absent exceptional circumstances. See Tr. at 11:9-24 (Court, Mysliwiec)(referring to 18 U.S.C. §§ 3143-3145(c)); United States v. Ganadonegro, 2012 WL 1132166, at *2-4 (D.N.M. March 14, 2012)(Browning, J.)(describing the law regarding releasing defendants pending sentencing). The Court indicated that a guilty plea would change the analysis of whether to allow Rodriguez to return to California at all. See Tr. at 13:16-25 (Court). Nonetheless, because Rodriguez had not yet pled guilty, the Court denied the Motion without prejudice to renewal "under the circumstances [-- the letters from the California employers --] that I've set forth." Tr. at 13:24-14:1 (Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

(g)     **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --

     (1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

     (2)     the weight of the evidence against the person;

     (3)     the history and characteristics of the person, including --

          (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

          (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

     (4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

8 U.S.C. § 3142(g).

     When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United

States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).  "'Once the presumption is invoked, the burden of production shifts to the defendant.'"  United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55(10th Cir. 1991)).

To determine whether there are conditions that would reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the

community." <u>United States v. Holguin</u>, 791 F. Supp. 2d at 1087 (citing <u>United States v.</u> <u>Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001); <u>United States v. Stricklin</u>, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")). Notably, however, even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain." <u>United States v.</u> <u>Stricklin</u>, 932 F.2d at 1355. <u>Accord</u> <u>United States v. Mercedes</u>, 254 F.3d at 436.

## THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order. 18 U.S.C. § 3145(a)-(b). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." <u>United States v. Cisneros</u>, 328 F.3d at 616 n.1. "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." <u>United States v. Rueben</u>, 974 F.2d 580, 585-86 (5th Cir. 1992). <u>See</u> <u>United States v. Maull</u>, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of a magistrate judge's order setting bond was de novo).

## ANALYSIS

The United States charges Rodriguez with committing a drug-related offense punishable by ten years or more in prison. <u>See</u> Criminal Complaint at 1. Rodriguez must therefore present evidence to rebut the presumption that he constitutes a flight risk and a danger to the community. <u>See</u> 18 U.S.C. § 3142(e)(3); <u>United States v. Villapudua-Quintero</u>, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a

rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).   Rodriguez has rebutted the presumption with evidence that he poses little danger to the community and has done well on pretrial supervision.   See Appeal at 1-3. Moreover, the Second Addendum to the Bail Report recommends that Rodriguez be released pending trial and allowed to return to San Diego.   See Second Addendum to the Bail Report at 1. Rodriguez has therefore met his burden of coming forward with evidence.

The burden remains on the United States to prove by a preponderance of the evidence that he constitutes a flight risk, and by clear-and-convincing evidence that he is a danger to the community, and that no conditions of release could mitigate these risks to acceptable levels.   See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616.   While the United States demonstrates by a preponderance of the evidence that Rodriguez constitutes a flight risk, the Court can impose conditions, which include remaining at La Pasada Halfway House, to mitigate this risk to acceptable levels.

With respect to the danger to the community prong, the United States does not meet its burden to show that Rodriguez constitutes a danger to the community by clear and convincing evidence.   See Tr. at 7:4-9 (Mysliwiec)(stating that "there is little chance that this defendant would be dealing drugs or anything like that, were you to approve this motion").   As the United States asserted at the hearing, "this is essentially a question of whether Defendant's proximity to the border in [Tijuana] is going to lead him into temptation to try to flee this prosecution."   Tr. at 7:9-15 (Mysliwiec).

The United States must prove by a preponderance of the evidence that Rodriguez constitutes a flight risk.   See 18 U.S.C. § 3142(f).   The Court concludes that the United States has met this burden.   The Court thinks that risk can be reduced to acceptable levels and that the

current conditions do that.   The question is whether the move to San Diego can be accommodated without raising that risk to unacceptable levels.  Since Rodriguez was detained at the halfway house, he has obtained two different jobs.  <u>See</u> Appeal at 2.  If he were to return to California, however, without any job to occupy his free time or induce him to stay in the United States, he might be tempted to flee across the border.  While he was in San Diego, he was unemployed since 2013.  <u>See</u> Bail Report at 2.  Moreover, he might also be persuaded to flee because his father lives in Tijuana.  <u>See</u> Bail Report at 1.  Furthermore, Rodriguez reported that he previously visited his father in Tijuana every weekend.  <u>See</u> Bail Report at 1-2.  By demonstrating Rodriguez' ties to Mexico and his ability to flee, the United States shows by a preponderance of the evidence that he constitutes a flight risk.  As the Court has already found, however, and as the United States apparently concedes, there is a "condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  18 U.S.C. § 3142(e).

Despite the United States' showing, the current conditions mitigate that risk to acceptable levels.  One of the conditions necessary to mitigate Rodriguez' flight risk is that he remain at La Pasada Halfway House.  <u>See</u> Order Setting Conditions of Release at 1-2.  As the Court stated at the hearing, however, if Rodriguez provides the Court with evidence that he is employed in San Diego, he may renew his Appeal at a later time.  <u>See</u> Tr. at 9:19-25 (Court).  As of now, the Court therefore denies Rodriguez' Appeal, affirms Judge Molzen's Order, and orders Rodriguez to remain under his current conditions of release.

The Court adds two caveats.  If Rodriguez does not plead and trial remains scheduled for February 3, 2016, the Court might be more inclined to allow Rodriguez a short visit to see his mother, rather than move to California.  The Court is skeptical that two employers will allow him

to work temporarily for one month.  Also, Rodriguez cannot go to Mexico, and his father cannot likely come to the United States, so a visit between them is not available.  On the other hand, if he is going to plead guilty, he will likely be taken into custody immediately.  Without pre-judging the issue, the Court does not see an exceptional circumstance that would warrant not detaining him.  In sum, time may have expired for a visit to California before Rodriguez needs to plead.

IT IS ORDERED that the Appeal of Detention Order on Behalf of Edgar Rodriguez, filed December 18, 2015 (Doc. 37), is denied without prejudice to renewal.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Paul Mysliwiec
  Assistant United States Attorney
US Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Christopher P. Lucero
Leon F. Howard, III.
The Law Office of Lucero & Howard, LLC
Albuquerque, New Mexico

  *Attorney for the Defendant*